IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NIYO HOLLANDER,

       Plaintiff,

v.                                                    1:17-cv-00090-LF

NANCY A. BERRYHILL, Deputy Commissioner
for Operations of the Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Niyo Hollander's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum (Doc. 17), which was fully briefed on September 14, 2017. *See* Docs. 19, 20, 21. The parties consented to my entering final judgment in this case. Docs. 3, 5, 6. Having meticulously reviewed the entire record and being fully advised in the premises, I find that Mr. Hollander's motion is not well-taken, and it will be DENIED.

### I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal

quotation marks and brackets omitted).  The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'"  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected

2

to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[1] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.    Background and Procedural History

Mr. Hollander was born in 1972 and completed a bachelor's degree. AR 48, 259.[2] He served for over 13 years as a medic in the United States Army, and worked for approximately six months as a medical technician. AR 264. Mr. Hollander filed an application for disability insurance benefits on May 16, 2015[3]—alleging disability since February 15, 2009 due to post-traumatic stress disorder ("PTSD"), ankylosing spondylitis,[4] plantar fasciitis, neuropathy, acid reflux, and prediabetes. AR 229–34, 262. The Social Security Administration ("SSA") denied his claim initially on October 6, 2015. AR 163–66. The SSA denied his claims on reconsideration on December 7, 2015. AR 168–71. Mr. Hollander requested a hearing before an

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] Document 12-1 to 12-10 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[3] Mr. Hollander filed a previous application for benefits, which was dismissed on May 26, 2011, after he failed to confirm that he would attend the ALJ hearing. AR 156–60.

[4] "Ankylosing spondylitis is an inflammatory disease that, over time, can cause some of the vertebrae in your spine to fuse." https://www.mayoclinic.org/diseases-conditions/ankylosing-spondylitis/symptoms-causes/syc-20354808 (last visited July 10, 2018).

ALJ. AR 172. On April 27, 2016, ALJ Lillian Richter held a hearing. AR 40–89. ALJ Richter issued her unfavorable decision on August 31, 2016. AR 16–39.

The ALJ found that Mr. Hollander met the insured status requirements of the Social Security Act through March 31, 2014. AR 21. At step one, the ALJ found that Mr. Hollander had not engaged in substantial, gainful activity between February 15, 2009, his alleged onset date, and March 31, 2014, his date last insured. *Id.* At step two, the ALJ found that Mr. Hollander suffered from the severe impairments of PTSD, major depressive disorder, left thigh pain, and obesity. *Id.* The ALJ found that Mr. Hollander's migraines, hearing loss, gastroesophageal reflux disease ("GERD"), and back pain were nonsevere. AR 22. At step three, the ALJ found that none of Mr. Hollander's impairments, alone or in combination, met or medically equaled a Listing. AR 22–24. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Hollander's RFC. AR 24–31. The ALJ found Mr. Hollander had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally balance, stoop, kneel, crouch, and crawl. He can frequently climb ramps and stairs. He can occasionally climb ladders, ropes, or scaffolds. He is limited to simple and routine work. He can have occasional contact with supervisors, coworkers, and members of the public. He should not work in close proximity to others in order to avoid distraction. He is limited to a workplace with few changes in the routine work setting. He is limited to making simple work-related decisions. He should avoid exposure to unprotected heights.

AR 24–25. At step four, the ALJ concluded that Mr. Hollander was unable to perform his past relevant work as an army medic or a medical technician. AR 31–32. The ALJ found Mr. Hollander not disabled at step five, concluding that he still could perform jobs that exist in significant numbers in the national economy—such as a marker, mailer sorter, and library page. AR 32.

On September 6, 2016, Mr. Hollander requested review of the ALJ's unfavorable decision by the Appeals Council. AR 14–15. On November 23, 2016, the Appeals Council denied the request for review. AR 1–3. Mr. Hollander timely filed his appeal to this Court on January 18, 2017. Doc. 1.[5]

## IV.  Mr. Hollander's Claims

Mr. Hollander raises five arguments for reversing and remanding this case: (1) the ALJ failed to adequately explain how she considered Mr. Hollander's disability determination from the Department of Veterans Affairs ("VA"); (2) the ALJ erred in assessing the medical evidence of Mr. Hollander's mental limitations; (3) the ALJ erred in relying on old consultative evaluations; (4) the ALJ erred in relying on improper factors in determining Mr. Hollander's RFC; and (5) the ALJ erred by failing to conduct a function-by-function assessment. *See* Doc. 17 at 17–24. For the reasons discussed below, none of these issues merits remand.

## V.  Analysis

### A.  The ALJ Adequately Explained How She Considered Mr. Hollander's Disability Determination From the VA.

Mr. Hollander argues that the ALJ failed to adequately consider evidence regarding his disability determination from the VA, and failed to explain her reasons for rejecting the "VA's view of the medical evidence." Doc. 17 at 17–18. The Commissioner argues that the ALJ adequately "discussed and weighed the VA disability rating." Doc. 19 at 18. For the reasons discussed below, I agree with the Commissioner.

---

[5] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2.

Another agency's decision regarding whether a claimant is disabled is not binding on the SSA. 20 C.F.R. § 404.1504 (effective through March 26, 2017).[6] Other agencies apply different rules and standards than the SSA for determining whether an individual is disabled, and "this may limit the relevance of a determination of disability made by another agency." SSR 06-03p, 2006 WL 2329939, at *7 (Aug. 9, 2006).[7] However, disability decisions from other agencies, as well as the evidence the agencies relied on in making their decisions, "may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules." *Id.* The SSA must independently evaluate the opinion evidence used by the other agencies in making their disability determinations in accordance with the SSA's guidelines for weighing opinion evidence. *Id.*

Another agency's disability decision is "evidence that the ALJ must consider and explain why he [or she] did not find it persuasive." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (internal citation omitted); *see also Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) ("Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.") (quotation omitted). The "relative weight" to be given to another agency's determination of disability "will vary depending upon the factual circumstances of each case." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

---

[6] The SSA has ceased considering disability determinations made by other governmental entities, such as the VA. For claims filed on or after March 27, 2017, the SSA "will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, [the SSA] will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4)." 20 C.F.R. § 404.1504 (effective March 27, 2017).

[7] SSR 06-03p was rescinded and does not apply to claims filed on or after March 27, 2017. *See* Notice of Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298 (Mar. 27, 2017); 2017 WL 3928297 (Apr. 6, 2017).

In Mr. Hollander's case, the ALJ analyzed the VA's rating as follows:

Only partial weight was given to the VA's opinions regarding the claimant's medical conditions.  The VA found the claimant was 70% disabled due to PTSD [AR 562].  However, the Social Security regulations provide the final responsibility for determining whether a claimant is able to work is solely reserved to the Commissioner.  Giving controlling weight to other opinions regarding disability would, in effect, confer upon a treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled (Social Security Ruling 96-5p).  I further note that the VA utilizes a different standard for determining disability than does the Social Security Administration.  Accordingly, a finding of disability by the VA is not binding upon me in this proceeding.  I have factored into consideration the many opinions rendered by VA providers in connection with the claimant's application for VA disability.  I have accorded these opinions significant weight because they appear to be well supported by findings on examination and with the VA medical evidence of record.  These opinions are reflected in the residual functional capacity.

AR 30–31.

The record in this case does not contain an actual VA disability rating decision.  Instead, the record contains Mr. Hollander's treatment records from the VA hospital, which contain passing references to his numerical VA disability rating, but do not include the VA's decision explaining the rationale behind the award of VA disability benefits to Mr. Hollander.  *See* AR 562 (listing Mr. Hollander's service connected/rated disabilities as part of a patient consult request).  The ALJ advised Mr. Hollander's representative that the VA's rating decision was missing from the record, and the representative stated she would submit it after the hearing.  AR 70–71, 88.  On May 23, 2016, the ALJ advised Mr. Hollander's representative that she had not received any additional evidence and that sshe would close the record in 10 days.  *See* AR 399.

Mr. Hollander submitted additional medical evidence, but did not submit the VA's disability decision. *See* AR 1461–1818.[8]

Given that there is no substantive decision from the VA in the record, the ALJ was left with nothing more than the VA's numerical rating to analyze. A "VA disability rating **decision** . . . is similar to an ALJ's decision in a Social Security proceeding, as opposed to the VA's numerical **rating** standing alone." *Rodgers v. Colvin*, No. 5:13-CV-345-D, 2015 WL 636061, at *8 (E.D.N.C. Feb. 13, 2015) (emphasis added); *see also Burch-Mack v. Comm'r of Soc. Sec.*, No. 8:15-CV-1167-T-JSS, 2016 WL 4087477, at *4–*5 (M.D. Fla. Aug. 2, 2016) (explaining differences between VA's disability rating and VA's disability rating decision). The ALJ correctly stated that whether the claimant is "disabled" is the ultimate issue reserved to the Commissioner; thus, another agency's finding that a claimant is disabled receives no special weight or significance. AR 30; 20 C.F.R. § 404.1527(d)(1)–(3) (effective Aug. 24, 2012 to March 26, 2017) (opinions on issues that are reserved to the Commissioner—such as whether the claimant is "disabled"—are never entitled to special significance); *see also* SSR 96-5p,[9] 1996 WL 374183, at *2 (July 2, 1996) ("Giving controlling weight to such opinions would, in effect, confer upon the [VA] the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.").

---

[8] It is unclear if Mr. Hollander's representative submitted the document found at AR 400. This document, however, is not the VA's disability decision. It merely lists the same information found throughout Mr. Hollander's treatment records from the VA—a list of numerical disability ratings by impairment, without any further explanation.

[9] SSR 96-5p was rescinded and does not apply to claims filed on or after March 27, 2017. *See* Notice of Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298 (Mar. 27, 2017); 2017 WL 3928297 (Apr. 6, 2017).

In Mr. Hollander's case, the ALJ adequately considered and weighed the VA's disability rating in making her decision. *See Baca*, 5 F.3d at 480. The ALJ gave the VA's disability rating "partial weight," and stated that she considered the medical opinions from Mr. Hollander's VA providers. AR 30–31. The Court finds no error in the ALJ assigning the opinion "partial weight." *See Rodgers*, 2015 WL 636061, at *9 ("Given the lack of evidence of record pertaining to Claimant's VA disability rating and the medical evidence and rationale underlying that rating, the undersigned determines that the ALJ did not err by according little weight to Claimant's numerical VA disability rating."). In addition, the ALJ independently evaluated the opinion evidence of the VA providers, exactly as she was required to do. *See* SSR 06-03p, 2006 WL 2329939, at *7. The ALJ thoroughly explained how she determined that Mr. Hollander was not disabled for the purposes of Social Security disability. AR 21–33.

Mr. Hollander's argument that this case is like *Winick v. Colvin*, 674 F. App'x 816 (10th Cir. 2017) (unpublished) is not persuasive. Doc. 17 at 18. In *Winick*, the ALJ rejected a VA rating **decision** finding the claimant 100% disabled on the following basis:

> The criteria used to determine a Veteran's disability rating is [sic] different from the criteria in the Social Security disability evaluations set out in rules and regulations. As such, determination by another agency of disability is not binding on the [ALJ] . . . . The [ALJ] has considered the fact that the claimant has impairments that the VA has found to be disabling and this has been factored into the claimant's [RFC].

*Id.* at 822. The Tenth Circuit remanded because the ALJ failed to explain "why he found the VA's determination of disability unpersuasive" or how the "impairments that the VA . . . found to be disabling were factored into the claimant's [RFC]." *Id.* (internal quotation marks and citation omitted).

In *Winick*, the ALJ rejected an actual VA rating **decision**. As discussed above, Mr. Hollander's case does not contain an actual VA rating decision. The ALJ in Mr. Hollander's

case was not required to defer to the VA's conclusion that he was 80% disabled. To do so would require the ALJ to defer on an issue reserved to the Commissioner, which is impermissible. The ALJ adequately explained her RFC findings with a thorough discussion of the medical and non-medical evidence. AR 24–31. The ALJ's Step Four and Step Five findings and analysis also were adequate. AR 31–33. As such, it is clear to the Court why the ALJ gave only "partial weight" to the VA's conclusion that Mr. Hollander was 80% disabled. In this case, it is enough that the ALJ acknowledged and considered the VA's disability rating. *See McFerran v. Astrue*, 437 F. App'x 634, 638 (10th Cir. 2011) (unpublished) (finding no error where the ALJ "considered" the VA's disability **rating** and the claimant did not point "to any specific factual finding or evidence in the VA determination that should have changed the ALJ's decision") (citation and alterations omitted); *see also Breneiser v. Astrue,* 231 F. App'x 840, 845 (10th Cir. 2007) (unpublished) (same). The Court finds no error in the ALJ's discussion or analysis of the VA's disability rating.

### B. The ALJ Did Not Err in Assessing the Medical Evidence of Mr. Hollander's Mental Limitations.

Mr. Hollander argues that the ALJ committed "numerous errors" in assessing his mental RFC. Doc. 17 at 19. First, Mr. Hollander takes umbrage with the fact that the ALJ cited the wrong page number for a VA psychologist's statement that Mr. Hollander's "reported problems with social interaction may have a moderate impact on employment but did not preclude employment completely." *Id.*[10] The ALJ cited AR 798–99 for this quote. AR 28. The quote is actually found at AR 807. The Court discerns no harmful error in this scrivener's error. *See Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009).

---

[10] Mr. Hollander raises the same issue in his argument alleging that the ALJ relied on "improper factors." Doc. 17 at 23. The argument is equally unavailing there.

Next, Mr. Hollander argues that the ALJ "erred in stating he afforded Dr. Prouty's assessment great weight." Doc. 17 at 19. Dr. Kathleen Prouty conducted a one-time psychological consultative exam of Mr. Hollander. AR 1451–52. The ALJ explicitly noted that Dr. Prouty opined that Mr. Hollander "had limited ability for social interaction, normal understanding and memory, and could sustain concentration and persistence unless dealing with an event that would trigger his PTSD symptoms." AR 26 (citing AR 1453). The ALJ gave Dr. Prouty's opinions "great weight" because they were supported by her "treatment notes" and consistent with the medical evidence of record. AR 26. The ALJ went on to conclude that Dr. Prouty's findings "can reasonably be expected to limit [Mr. Hollander's] social interaction, concentration, and persistence abilities. However, [Dr. Prouty] also noted that he had intact recall, had a score of 30/30 on the Mini-Mental State Examination and adequate judgment and insight. Dr. Prouty's opinion is consistent with my finding that the claimant would be capable of simple, low stress work." *Id.*

Mr. Hollander argues that the ALJ did not give Dr. Prouty's opinion "great weight" as she stated. Doc. 17 at 19. As evidence of the ALJ's failure to give the opinion "great weight," Mr. Hollander points out that he had "at least one major decompensation episode after [Dr. Prouty's] assessment in 2010," implying that Dr. Prouty's opinion is therefore "stale." *Id.* at 19–20.

The Commissioner argues that Mr. Hollander fails to explain how his later episode of decompensation is incompatible with the limitations in concentration and persistence found by Dr. Prouty. Doc. 19 at 16. The Commissioner further asserts that Dr. Prouty's opinion is not stale because the state agency doctors who reviewed the record after Mr. Hollander's later episode of decompensation—Drs. Wewerka and Simutis—similarly concluded that Mr.

Hollander "could perform unskilled work with limited social interactions, consistent with the ALJ's ultimate RFC assessment." Doc. 19 at 16 (citing AR 25, 141, 143–44, 153).

In his reply, Mr. Hollander argues for the first time that the ALJ impermissibly "picked and chose" among the moderate limitations in Dr. Wewerka's opinion, in violation of *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). Doc. 20 at 5–6. Mr. Hollander fails to explain, however, how this alleged error shows that Dr. Prouty's opinion is stale, or how Dr. Wewerka's opinion is not consistent with Dr. Prouty's opinion. Because this argument is new, and raised for the first time in the reply, the Court will not consider it. *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("arguments raised for the first time in a reply brief are generally deemed waived") (citation omitted).

Finally, Mr. Hollander also takes umbrage with the ALJ's statement that Dr. Prouty's "treatment" notes support her opinion—pointing out that Dr. Prouty was a one-time consulting doctor, not a treating physician. Doc. 17 at 20. The Commissioner responds that the ALJ "was under no misconception that Dr. Prouty was a treating psychologist" and notes that the ALJ referred to Dr. Prouty as a "consultative examiner." Doc. 19 at 16 (citing AR 25). The Commissioner further argues that whether Dr. Prouty's notes are called "treatment notes" or "examination notes" has no bearing on the outcome of the case, "because, whatever the notes are called, they supported both Dr. Prouty's opinion and the ALJ's RFC assessment." Doc. 19 at 16. I agree with the Commissioner. Read as a whole, the ALJ's analysis of Dr. Prouty's opinion shows that the ALJ knew that Dr. Prouty was a consultative examiner. *See* AR 25 (ALJ referred to Dr. Prouty as a "consultative examiner"); AR 26 (ALJ did not analyze Dr. Prouty's opinion under the treating physician rule). The Court does not require technical perfection in an ALJ's

opinion, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012), and discerns no

harmful error in the ALJ's mistaken reference to Dr. Prouty's note as a "treatment note."

### C.  The ALJ Did Not Err by Relying on Old Consultative Evaluations.

Mr. Hollander argues that the ALJ erred by giving "great weight" to the opinion of Dr.

Gregory Finnoff because Dr. Finnoff evaluated him in October 2008—four months before his

alleged onset date of February 2009.  Doc. 17 at 20.  Mr. Hollander argues that Dr. Finnoff's

opinion was "stale," and that the ALJ should have considered it "in light of the later-developed

evidence."  *Id.*

Medical reports issued prior to the alleged onset date are not "categorically irrelevant."

*Lackey v. Barnhart*, 127 F. App'x 455, 458 (10th Cir. 2005) (unpublished).  These reports are

part of the case record, and the ALJ should consider them.  *Hamlin v. Barnhart,* 365 F.3d 1208,

1223 n.15 (10th Cir. 2004); *see also* 42 U.S.C. § 423(d)(5)(B) ("[T]he Commissioner of Social

Security shall consider all evidence available in such individual's case record.").

Dr. Finnoff conducted a physical consultative exam on Mr. Hollander on October 25,

2008, as part of Mr. Hollander's first application for benefits.  AR 1415–21.  Dr. Finnoff opined

that Mr. Hollander had no apparent physical limitations and would be able to stand, walk, sit, lift

and carry without restrictions.  AR 1420.  Dr. Finnoff also opined that Mr. Hollander had "no

postural, manipulative, or environmental restrictions."  *Id.*

The Court is not convinced that the ALJ erred in giving Dr. Finnoff's opinion "great

weight."  Mr. Hollander argues that Dr. Finnoff's opinion is "stale," but he fails to point to any

evidence showing that his condition worsened between the time Dr. Finnoff issued his opinion

and his alleged onset date four months later.  As the Commissioner points out, state agency non-

examining doctors Werner and Romanick opined in October 2015, well after his alleged onset

date, that Mr. Hollander did not have any physical limitations. Doc. 19 at 16–17 (citing AR 139,

151). In addition, consultative examiner Dr. Jeri B. Hassman opined on May 27, 2010 that Mr.

Hollander did not have any physical limitations expected to last for more than twelve months.

AR 1457. Given that Drs. Werner, Romanick, and Hassman all shared Dr. Finnoff's opinion that

Mr. Hollander did not have significant physical limitations, the Court is not convinced that Dr.

Finnoff's opinion was "stale," or that the ALJ erred in giving it "great weight." Furthermore, the

ALJ did find that Mr. Hollander had some physical limitations—limiting him to "light work"

with additional nonexertional limitations. AR 24–25.

Mr. Hollander next faults the ALJ for failing to discuss the opinion of Dr. Victor Neufeld,

who conducted a consultative psychological examination in October 2008—four months before

his alleged onset date of February 2009. Doc. 17 at 20. Mr. Hollander suggests that the ALJ did

not discuss the opinion "because it was favorable to [his] claim." *Id*. The Commissioner argues

that that this part of Dr. Neufeld's opinion "does not provide any vocationally-relevant

limitations." Doc. 19 at 17 n.7. The Commissioner also argues that it is not obvious that the

ALJ's RFC is inconsistent with Dr. Neufeld's opinion. *Id*. Because of this, the Commissioner

asserts that Mr. Hollander failed to meet his burden of showing that the ALJ's failure to discuss

Dr. Neufeld's opinion was harmful. *Id*. I agree with the Commissioner.

Dr. Neufeld conducted a consultative psychological exam of Mr. Hollander on October

27, 2008. AR 1422–25. Dr. Neufeld opined that Mr. Hollander was "able to understand and

remember instructions, although he may have some difficulty in stressful, or overstimulated

circumstances." AR 1425. This portion of Dr. Neufeld's opinion is consistent with the RFC

adopted by the ALJ (*see* AR 25 "limited to simple and routine work" with only occasional social

contact and few changes in the routine work setting).

Dr. Neufeld also opined that Mr. Hollander was "moderately to markedly impaired with respect to persistence, pace and social interaction." *Id.* "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). When there is "no reason to believe that a further analysis or weighing of [an] opinion" would advance a claim of disability, the alleged error is harmless. *Keyes-Zachary*, 695 F.3d at 1163.

The ALJ thoroughly discussed the medical evidence from the relevant time period (between the alleged onset date and the date last insured) that showed Mr. Hollander's limitations in persistence, pace, and social interaction. These opinions were more recent, and more detailed than the opinion rendered by Dr. Neufeld. The Court discerns no harmful error in the ALJ's failure to discuss Dr. Neufeld's finding that Mr. Hollander was "moderately to markedly impaired with respect to persistence, pace and social interaction."

The ALJ gave "great weight" to Dr. Prouty's May 24, 2010 assessment that Mr. Hollander "had limited ability for social interaction" and that his "sustained concentration and persistence" were within normal limits "unless dealing with an event that would trigger his PTSD symptoms." AR 26 (citing AR 1453). The ALJ explained how Dr. Prouty's findings were supported by her notes and the medical evidence of record. The ALJ also gave "great weight" to the March 29, 2012 findings of an examining psychologist who concluded that Mr. Hollander had only "mildly impaired ability to sustain attention over time" and an ability to process information which "ranged from mildly impaired to high average." AR 27 (citing AR 616). The ALJ relied on this opinion to limit Mr. Hollander to unskilled work. AR 27. The ALJ also discussed an April 10, 2012 exam which showed that Mr. Hollander's language, visual memory, and executive functioning abilities were all within normal limits. AR 27–28 (citing AR

611).  The ALJ also cited examining psychologist Shelley Leiphart's April 24, 2012 finding that

Mr. Hollander's "reported problems with social interaction may have a moderate impact on

employment but did not preclude employment completely."  AR 28 (citing AR 807).[11]  In

addition, the ALJ documented Mr. Hollander's improvement over time.  AR 28 (noting that

October 20, 2012 mental status exam showed improvement and logical thought processes;

February 5, 2013 "linear thought processes," August 9, 2013 "rational and relevant thought

processes").  Finally, the ALJ gave "great weight" to the state agency psychologists' findings

that Mr. Hollander is limited to simple work with social limitations.  AR 30.

     The evidence the ALJ considered thoroughly documented Mr. Hollander's limitations

during the relevant time period.  It also was much more detailed than the opinion of Dr. Neufeld.

Furthermore, the ALJ described how Mr. Hollander had improved over time.  Mr. Hollander fails

to show how Dr. Neufeld's opinion is inconsistent with the ALJ's RFC, and fails to show how

the ALJ's failure to discuss Dr. Neufeld's opinion, which predates the onset date, is harmful.[12]

The Court finds no reversible error on this issue.

---

[11] The ALJ cited AR 788–89.  The material the ALJ cited is actually found at AR 807.

[12] In his reply, Mr. Hollander argues that Dr. Neufeld found him moderately to markedly
impaired in the ability to "perform at a consistent pace without an unreasonable number and
length of rest periods—a requirement of even unskilled work."  Doc. 20 at 6.  Dr. Neufeld,
however, did not opine that Mr. Hollander had a limitation in this specific skill.  Dr. Neufeld's
general statement that Mr. Hollander had limitations in the areas of "persistence, pace and social
interaction" is very broad.  Without further explanation by Dr. Neufeld, it is not clear to the
Court what specific work limitations would stem from these broad limitations.  *See* SSA-4734-
F4-SUP, Mental Residual Functional Capacity Assessment Form (available at
www.ssaconnect.com/tfiles/SSA-4734-F4-SUP.pdf, last visited July 10, 2018) (the ability "to
perform at a consistent pace without an unreasonable number and length of rest periods" is a
subset of the broader category of limitations in "Sustained Concentration and Persistence").

### D. The ALJ Did Not Rely on "Improper Factors" in Assessing Mr. Hollander's RFC.

Mr. Hollander alleges that the ALJ relied on a number of "improper factors" in assessing his RFC. Doc. 17 at 21–23. The Commissioner argues that the ALJ "reasonably discounted [Mr. Hollander's] reports of debilitating physical and mental symptoms because they were inconsistent with the medical evidence, with his treatment, and with his robust daily activities." Doc. 19 at 9. Again, I agree with the Commissioner.

Mr. Hollander first argues that the ALJ failed to recognize that his psychiatric hospitalizations "were episodes of decompensation during which [he] could not function at all." Doc. 17 at 21. I disagree. The ALJ expressly noted that that Mr. Hollander had suffered from "one to two episodes of decompensation, each of extended duration." AR 24. The ALJ also noted Mr. Hollander "was hospitalized for mental issues twice while in the military service and twice after his discharge." AR 25. In addition, the ALJ discussed both his December 26, 2011 hospitalization and his January 7, 2012 hospitalization. AR 26–27. The ALJ adequately considered Mr. Hollander's episodes of decompensation and his hospitalizations.

Mr. Hollander next argues that the ALJ erred in finding Mr. Hollander less limited than he alleged based on his daily activities. Doc. 17 at 21. He argues that the "specific facts behind the generalities" the ALJ relied on "paint a very different picture" than the one painted by the ALJ, and that remand is therefore required. *Id*. (quoting *Krauser v. Astrue*, 638 F.3d 1324, 1332 (10th Cir. 2011)). Sporadic performance of a few activities "does not establish that a person is capable of engaging in substantial gainful activity." *Frey v. Bowen*, 816 F.2d 508, 516–17 (10th Cir. 1987) (internal citation omitted). Nonetheless, an ALJ may consider a claimant's daily activities in assessing the limiting effects of his symptoms. *Wilson v. Astrue*, 602 F.3d 1136,

1146 (10th Cir. 2010); *see also Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (finding it acceptable for ALJ to contrast claimant's activities with claim of extreme limitations).

The ALJ found that Mr. Hollander "described daily activities that are not limited to the extent one would expect, given the complaints of mentally and physically disabling symptoms and limitations." AR 30. Despite his complaints of disabling mental limitations, the ALJ noted that Mr. Hollander was "taking online college courses," that he enjoyed "creating drawings and sculptures as a profession," and that he planned on pursuing an art degree. *Id*. Despite his complaints of physical limitations, Mr. Hollander reported "doing a lot of exercise with his girlfriend," taking care of his daughter, volunteering, and participating in equine therapy. *Id*. Mr. Hollander argues that his "daily activities are not an indication that he could work in the stress-filled workplace." Doc. 17 at 21. The ALJ, however, did not rely on these activities alone in concluding that Mr. Hollander was not disabled, and the Court does not find error in the ALJ citing these activities in finding Mr. Hollander less limited than he alleged.

Mr. Hollander next alleges the ALJ erred in finding him less limited than alleged because of the gaps in his treatment. Doc. 17 at 22. He cites *Grotendorst v. Astrue,* 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished), for the proposition that the "amount of treatment" he received is not a valid consideration. *Id*. In *Grotendorst*, however, the court held that the "amount of treatment" is not relevant for determining severity at step two; it does not address how the ALJ should address gaps in treatment when assessing credibility. SSR rulings specifically permit an ALJ to consider the "[t]reatment, other than medication, an individual receives or has received for relief of pain or other symptoms" in assessing the intensity, persistence and limiting effects of the claimant's symptoms." SSR 16-3p, 2016 WL 1119029, at

*7 (Mar. 16, 2016).[13]  The Court discerns no error in the ALJ's discussion of the gaps in Mr. Hollander's treatment.

Mr. Hollander next faults the ALJ for mentioning an October 23, 2012 progress note in which he reported that he was skipping the morning dose of his medication.  Doc. 17 at 22 (citing AR 779).  The ALJ cited this, along with several other facts in the record, to support her finding that Mr. Hollander's "failure to be entirely compliant with treatment suggests that his symptoms may not have been as limiting as he alleged."  AR 29.  In support of this, the ALJ also cited the fact that, at the time of the hearing, Mr. Hollander was no longer receiving treatment for his PTSD, that he failed to keep some of his appointments, that despite his allegations of hip pain he was not interested in surgery, and that there were significant gaps in his treatment history.  AR 29–30.  Mr. Hollander suggests that the ALJ did not consider the reasons he was noncompliant with his medication—pointing out that he testified at the hearing that he had "really bad reactions to some of the psychotropic medicines," and that he told his doctors "he sometimes had reactions to his medications, or they did not help."  Doc. 17 at 22 (citing AR 78, 451, 877–79).  However, as the Commissioner points out, Mr. Hollander admitted that he was skipping doses of Tramadol,[14] a pain reliever, not doses of psychotropic medications.  Doc. 19 at 11 n.5.  In addition, Mr. Hollander points to no evidence in the record indicating an adverse

---

[13] The Commissioner cites SSR 96-7p, 1996 WL 374186, at *7.  Doc. 19 at 11.  This SSR was replaced by SSR 16-3p on March 16, 2016.  *See* SSR 16-3p, 2016 WL 1119029, at *1.  The ALJ issued her decision on August 31, 2016, AR 33, making SSR 16-3p the applicable ruling.  The Commissioner also cites to 20 C.F.R. § 404.1529(c)(3)(iv)–(v) for the proposition that an ALJ "must" consider the amount of treatment a claimant has received.  Doc. 19 at 11.  The CFR subsections cited by the Commissioner were not in effect until March 27, 2017, after the ALJ issued her decision, and therefore do not apply.

[14] Tramadol is a narcotic analgesic used to relieve moderate to moderately severe pain.  *Medline Plus, Drugs, Herbs, and Supplements*, available at https://medlineplus.gov/druginfo/meds/a695011.html#why (last visited July 10, 2018).

reaction to or ineffective results from Tramadol. Indeed, at the October 23, 2012 visit cited by the ALJ, Mr. Hollander admitted that the "[T]ramadol strength/frequency are sufficient," and that lately he "has been skipping morning doses." AR 779. At the hearing, Mr. Hollander stated that he still took Tramadol occasionally. AR 78. The Court discerns no error in the ALJ's discussion of Mr. Hollander skipping doses of his medication.

Finally, Mr. Hollander faults the ALJ for giving "significant weight" to examining psychologist Sandra Mitchell's[15] March 29, 2012 findings. Doc. 17 at 22.[16] The ALJ cited Dr. Mitchell's objective findings, in which she noted that Mr. Hollander "had mildly impaired ability to sustain concentration over time," and that "[h]is ability to process information ranged from mildly impaired . . . to high average." AR 27 (citing AR 616). Mr. Hollander argues that the ALJ failed to also consider Dr. Mitchell's subjective findings that his "significant psychological distress likely interferes with his day-to-day memory functioning despite his good testing in a structured testing environment." Doc. 17 at 23 (citing AR 617). Mr. Hollander argues that his performance in a structured setting is not evidence that he can function outside of the structured setting. Doc. 17 at 23 (citing *Barnes v. Barnhart*, 116 F. App'x 934, 940 (10th Cir. 2004) (unpublished)). *Barnes*, however, is not on point. Instead, it deals with the standards an ALJ must use to prove lack of adaptive functioning to meet Listings 12.05(C) and (D). *Barnes*, 116 F. App'x 939. The ALJ did not err in relying on Dr. Mitchell's findings.

The Court discerns no legal errors in the ALJ's RFC analysis. In addition, the RFC is supported by substantial evidence. Therefore, remand is not merited.

---

[15] Sandra Mitchell, a neuropsychology post-doctoral fellow, completed the evaluation and report under the supervision of clinical neuropsychologist Joseph Sadek, Ph.D. AR 612.

[16] Mr. Hollander argues that the ALJ gave "significant weight" to Mr. Hollander's PTSD group therapy leader's comments, but that the comment was actually from his neuropsychiatric evaluation. Doc. 17 at 22–23. The ALJ, however, clearly assigned "significant weight" to the examining psychologist's opinion. *See* AR 27.

### E.  The ALJ Did Not Err in Failing to Do a Function-by-Function Assessment.

Mr. Hollander argues that the ALJ erred in failing to do a function-by-function analysis, and failed to adequately consider his claim that he cannot sit or stand for prolonged periods. Doc. 17 at 23.  The Commissioner argues that the "ALJ's decision demonstrated that she gave deference to the medical opinions, which supported her assessment of Plaintiff's RFC."  Doc. 19 at 21.  For the reasons outlined below, I agree with the Commissioner.

Step Four of the sequential evaluation process is comprised of three phases.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), . . . and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. . . .  In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. . . .  At each of these phases, the ALJ must make specific findings.

*Id.* (internal citations omitted).

An "RFC determines a work capability that is exertionally sufficient to allow performance of at least substantially all of the activities of work at a particular level."  SSR 83-10, 1983 WL 31251, at *2.  It is a reflection of "the maximum amount of each work-related activity the individual can perform," and the ALJ must describe the "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  *Id.*

An ALJ may not initially express an RFC in terms of "sedentary," "light," "medium," "heavy," and "very heavy,"—the exertional levels of work.  *Id.* at *3.  To ensure accuracy, "[t]he

RFC assessment must *first* identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id*. at *1 (emphasis added). The ALJ may express the RFC in terms of exertional levels only after performing a function-by-function analysis. *Id.*

A function-by-function assessment is the description of an "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." *Id.* at *7. Without this initial step "an adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id*. at *4. The ALJ is required to address "an individual's limitations and restrictions of physical strength and define [ ] the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing and pulling." *Id*. at *5. For example, "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours." *Id*. "Each of the seven strength demands must be considered separately." *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003) (unpublished) (citing SSR 96-8p, 1996 WL 374184, at *3–4).

An ALJ's failure to do an explicit function-by-function analysis does not always require remand, however. In *Hendron*, the Tenth Circuit held that the ALJ did not err by finding that Ms. Hendron could perform a "full range of sedentary work" without an "explicit function-by-function analysis." *Hendron v. Colvin,* 767 F.3d 951, 956 (10th Cir. 2014). The court did not require an explicit function-by-function analysis because there was no evidence supporting a limitation in the claimant's ability to sit during the relevant two-month time period; therefore, the analysis was not critical to the outcome of the case. *Id.* at 956–57. Similarly here, Mr. Hollander points to no evidence supporting any limitation in his seven strength demands during

the relevant time period that the ALJ failed to adequately consider, and that would affect the outcome of this case. As in *Hendron*, the ALJ's failure to do a more explicit function-by-function analysis was harmless.

Mr. Hollander points to his testimony at the April 27, 2016 ALJ hearing in which he testified that he needed to change positions "pretty constantly," and that no one position was comfortable for very long. AR 81. This testimony, however, was well after Mr. Hollander's date last insured of March 31, 2014. *See* AR 21. Mr. Hollander points to no evidence indicating that he needed a sit-stand option during the relevant time period—here between his alleged onset date of February 15, 2009 and his date last insured of March 31, 2014. The ALJ specifically noted that Mr. Hollander's physical complaints "increased in number and intensity after the date last insured," and that the medical records for the period after his date last insured did not shed light on his level of functioning "prior to the date last insured." AR 29.[17]

The ALJ thoroughly discussed the evidence from the relevant time period about Mr. Hollander's ability to sit and walk. The ALJ discussed a September 20, 2012 x-ray showing that Mr. Hollander did not have any fracture or dislocation of his left hip. AR 30 (citing AR 535). The ALJ discussed Dr. Hassman's May 27, 2010 physical consultative exam finding that Mr. Hollander walked with a "normal gait and no limp." AR 30 (citing AR 1455). The ALJ discussed Dr. Hassman's finding that Mr. Hollander did not have any physical limitation expected to last for longer than 12 months, stating that this finding was "generally consistent with other medical evidence of record, or rather the absence thereof, indicating that [Mr.

---

[17] Importantly, on his Adult Function Report dated October 5, 2008 (as part of his first application), Mr. Hollander did not note any limitations with his abilities to stand, walk, or perform any physical activities. AR 366. He first reported his need to constantly change "position from sit to stand to lie down" on an Adult Function Report dated August 3, 2015—well after his date last insured of March 31, 2014. AR 271, 278.

Hollander] was not as physically limited as he alleges." AR 26. The ALJ also gave "great weight" to Dr. Finnoff's October 25, 2008 finding that Mr. Hollander had no physical limitations, since this opinion was consistent with Dr. Hassman's opinion and the fact that Mr. Hollander was "quite physically active." AR 31.[18] The ALJ noted that Dr. Finnoff reported that Mr. Hollander had "a non-antalgic gait, and was able to stand and walk on heels and toes." AR 31 (citing AR 1418).[19] Dr. Beeson opined on December 12, 2012 that Mr. Hollander's "hip and spine conditions mean heavy physical labor is inadvisable, but sedentary labor should be fine." AR 767. The ALJ cited Dr. Beeson's opinion in finding that Mr. Hollander's back pain was a nonsevere impairment at step two. AR 22.

As in *Hendron*, the ALJ "did not overlook [the claimant's] problems . . . [but] found that the evidence did not support any limitation . . . during the Relevant Time Period." *Hendron*, 767 F.3d at 957. The ALJ's failure to find explicitly that Mr. Hollander was able to meet the sitting and standing requirements of light work was "not critical to the outcome of this case, and Mr. Hollander has not demonstrated error." *Id.*; *see also Keyes–Zachary,* 695 F.3d at 1166 ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense . . . . [W]e cannot insist on technical perfection.").

---

[18] Mr. Hollander again argues that the ALJ erred in relying on Dr. Finnoff's opinion, since it predates the alleged onset date. Doc. 17 at 23. The Court already has addressed this argument, and will not address it a second time.

[19] Dr. Finnoff also opined that Mr. Hollander "would be able to stand or walk, sit, lift and carry without restrictions. He ambulates without any assistive device. He would have no postural, manipulative or environmental restrictions apparent today." AR 1420.

## VI.    Conclusion

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum (Doc. 17) is DENIED.

IT IS FURTHER ORDERED that the Commissioner's final decision is AFFIRMED.


_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent